UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ERNEST CHARLES WATSON, JR. | ) CASE NO. 13-11345-RLM-13 |
| | ) |
| | ) |
| DEBTOR(S) | ) |

MOTION FOR ORDER OF CONTEMPT

Comes now the Debtor, Ernest Charles Watson, Jr., by counsel, and moves the Court for an order directing BSI Financial Services/Servis One, Inc., hereafter the "Creditor", to appear and show cause why the Creditor should not be held in contempt and sanctioned for the willful violations of the Discharge Injunction under 11 U.S.C. § 524, and in support, state the following:

1. On October 25, 2013, the Debtor filed for bankruptcy protection under Title 11, Chapter 13, of the United States Code, bankruptcy case number: 13-11345-RLM-13.

2. At the time of filing, Debtor owned the real property commonly known as 6 Trotters Run, Brownsburg, IN 46112.

3. The filing of the Debtor's bankruptcy case created an automatic stay that prohibited any further contact by the creditors of the Debtor.

4. The Creditor is a debt collection agency attempting to collect a debt from the Debtor.

5. On February 17, 2006, Debtor received a mortgage loan from First Indiana Bank, N.A. (the "Mortgage").

6. The Mortgage secured the repayment of the indebtedness evidenced by a promissory note in the amount of $23,230.00.

7. The rights to this Mortgage were sold to BMO Harris Bank, N.A.

8. Debtor defaulted on the Mortgage in or around June of 2013 by failing to make monthly payments pursuant to the Loan.

9. In 2013, the Debtor retained Sawin & Shea, LLC., for legal representation regarding the Debtor's debts.

10. On October 25, 2013, the Debtor filed for bankruptcy protection under Title 11, Chapter 13, of the United States Code, bankruptcy number: 13-11345-RLM-13.

11. On or about October 31, 2013, the Bankruptcy Noticing Center sent notice to the creditors listed on the Debtor's voluntary petition. Upon filing a bankruptcy case the Court issues an automatic stay prohibiting debt collection. *See Exhibit "1" attached hereto.*

12. The Debtor's bankruptcy petition contained a list of schedules of debts.

13. The aforementioned debt was properly listed on Schedule "D" of the Debtor's bankruptcy petition.

14. On February 13, 2014, BMO Harris Bank, N.A. filed a claim in the Debtor's Bankruptcy case.

15. On April 25, 2014, the Debtor filed an Amended Chapter 13 Plan.

16. The Amended Chapter 13 Plan stated the intent of the Debtor to surrender the real property. *See Exhibit "2" attached hereto.*

17. On May 29, 2014, Debtor's Amended Chapter 13 Plan was confirmed by the Court.

18. On September 23, 2014, the real property commonly known as 6 Trotters Run, Brownsburg, Indiana 46112, was sold at Sheriff Sale. The sale partially satisfied the Creditor's claim.

19. On October 14, 2014, a transfer of BMO Harris Bank N.A.'s claim was transferred to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee for the PrimeStar-H Fund II Trust. *See Exhibit "3" attached hereto.*

20. Wilmington Savings Fund Society, FSB, never amended their proof of claim to unsecured after the sale of said real property.

21. On or about November 11, 2018, the Creditor sent a formal notice to the Debtor stating:

    *"This letter is formal notice by BSI Financial Services (herein as "BSI") the Servicer of the above-referenced loan on behalf of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee for the PrimeStar-H Fund II Trust that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed("Security Instrument") for failure to pay amounts due." See Exhibit "4" attached hereto.*

22. The November 11, 2018 letter states, "As of the date of this notice, the total amount required to cure the default is $7,353.04."

23. On February 5, 2019, after complying with and fulfilling all the obligations created by the Chapter 13 Plan, Plaintiff was discharged from Bankruptcy. Because he was discharged, Debtor's personal liability on the mortgage loan was extinguished.

24. On or about February 5, 2019, the Bankruptcy Noticing Center sent the holder of the creditor who filed a proof of claim in the bankruptcy a copy of the Discharge

Order, including an Explanation of Bankruptcy Discharge in a Chapter 13 Case. *See Exhibit "5" attached hereto.*

25. On or about February 11, 2019, the Creditor sent a mortgage statement to the client in an attempt to collect the debt. The mortgage lists the total amount due, contains a payment due date, states that a late fee will be charged for untimely payments, gives six possible payment methods, separates out from the total amount due the amount of fees and charges previously assessed, and also contains a detachable "payment coupon" which states the total amount due and recalculates the amount due for a late payment. *See Exhibit "6" attached hereto.*

26. *The February 11, 2019, Mortgage statement sent by Creditor includes bankruptcy language regarding the Mortgage. The letter states:*

    *"if you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only." See Exhibit "6" attached hereto.*

27. *The February 11, 2019 statement goes on further to include a disclaimer regarding Debtor's credit report. The disclaimer states, "We may report information about your account to credit bureaus. Late payments, missed payment or other defaults on your account may be reflected in your credit report." See Exhibit "6" attached hereto.*

28. Following the entry of discharge, the Creditor began sending monthly statements and continues to send monthly statements to Debtor in an attempt to collect a debt. *See Exhibit "7" attached hereto.*

29. According to the Court in <u>Gruber v. Creditors' Prot. Serv. Inc,</u> 742F.3d271,273 (7th Cir. 2014):

    *"The language cited above…(The two disclaimers)…plainly expressed that Defendant is attempting to collect a debt and conflict with the bankruptcy disclaimer, which created an issue of fact regarding whether an objective unsophisticated consumer would have been misled by this letter. Therefore, Defendant has not demonstrated, as a matter of law, that [the] disclaimer language is sufficiently clear that it is implausible that an unsophisticated debtor would believe that [Defendant was] attempting to collect a debt from the debtor personally. Gagnon, 563 B.R. at 844.*

30. The U.S. District Court stated in <u>Roth v. Nationstar Mortgage, LLC.</u>, Case No: 2:15-cv-783-FtM-29MRM, 2016 WL 3570991:

    *"Viewing the cumulative effect of the Statement's language from the perspective of the least sophisticated consumer, it is in fact difficult to conceive of any credible reason for Nationstar to send the informational statement other than to pressure Plaintiff into making payments on the mortgage debt for which her personal liability had already been discharged.[6] It is true that the informational statement does not expressly state that it is "a communication sent for the purpose of collecting a debt," But as just discussed, this absence is not dispositive,*

> *The statement lists the total amount due, contains a payment due date, states that a late fee will be charged for an untimely payment, gives six possible payment methods, and separates out from the total amount due the amount of fees and charges previously assessed. That is not all. The statement contains an "Important Messages" box advising Plaintiff that her "escrow account has a negative balance," and expressly "recommend[ing she] make additional payments" to avoid "an increase in [her] monthly escrow payment" [7] There is also a detachable "payment coupon" which states the total amount due and recalculates the amount due for a late payment.[8]"*

31. On or about April 9, 2019, the Creditor sent an informational letter to the Debtor that contained the FDCPA debt collection disclaimer and the Bankruptcy disclaimer. *See Exhibit "8" attached hereto.*

32. On or about June 3, 2019, Creditor sent an additional informational letter to Debtor including both the FDCPA debt collection disclaimer and bankruptcy disclaimer. *See Exhibit "9" attached hereto.*

33. The Creditor continues to send monthly statements.

34. As the debt to Creditor was discharged in 2019 and the real property was sold at Sheriff Sale, and the title transferred in 2014, there is no conceivable reason for the Creditor to continue to send "informational statements" other than to harass and demand payment from Debtor.

35. On or about June 3, 2019, Debtor obtained a copy of his Experian Credit Report.

36. The June 3, 2019 Experian Credit Report shows that the Creditor is continuing to report partial account number XX3301 with a balance of $29,838. This account was verified in April of 2019. *See Exhibit "10" attached hereto.*

37. The June 3, 2019, Experian Credit Report also shows that the Creditor is reporting inaccurate payment history. *See Exhibit "10" attached hereto.*

38. The Creditor is also misrepresenting the legal status of the alleged debt.

39. The Creditor is attempting to collect a debt that it is legally enjoined from collecting.

40. Debtor suffered severe frustration which has led to anxiety directly related to the Creditor's conduct.

41. Debtor continues to suffer from severe anxiety and frustration as his credit report contains inaccurate information.

42. BSI Financial are in direct violation of the discharge in injunction as stated by the US Supreme court April 24, 2019 opinion Taggart v. Lorenzen as there is "no fair ground of doubt" as to whether the order barred the creditor conduct of attempting to collect.

43. Debtor's emotional state has suffered great harm as he continues to be harassed by monthly billing statements from BSI Financial. Debtor reasonably believes that BSI Financial will attempt more aggressive collection of this discharged debt.

WHEREFORE, the Debtor, by counsel, requests that BSI Financial Services /Servis One, Inc., be held in contempt for their willful and continuing violation of the discharge injunction by attempting to collect on a discharged debt. The Debtor seeks real damages, punitive damages, attorney fees, costs, and for all just and proper relief.

Respectfully submitted,

By: /s/ Richard J. Shea
Sawin & Shea  LLC
Attorneys for Debtor(s)
6100 N KEYSTONE AVE STE 620
INDIANAPOLIS IN  46220-2430
ecf@sawinlaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on the following parties through the Court's Electronic Case Filing System or by first-class U.S. Mail, postage prepaid:

U.S. Trustee
Ch 7/13 Trustee

I further certify that a copy of the foregoing was served on the following parties by certified first-class U.S. Mail, postage prepaid:

BSI Financial Services/Servis One, Inc.
C/o Gagan Sharma, President
1425 Greenway Drive, Ste. 400
Irving, TX  75038

BSI Financial Services/Servis One, Inc.
C/o Jill Johnson-Sheely, Vice President
314 S. Franklin Street
Titusville, PA  16354

BSI Financial Services/Servis One, Inc.
C/o Incorp Services, Inc., Registered Agent
200 Byrd Way, Ste. 205
Greenwood, IN  46143

 July 17, 2019                                                          /s/ Richard J. Shea